IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

CHICAGO MOTOR CAR CORP., PARIN SHAH, and FRANK SACCO,

　　　　　　　　Plaintiffs,

versus

DAVID BATES,

　　　　　　　　Defendant.

12cv8905
Judge John Z. Lee
Mag. Judge Daniel G. Martin

**FILED**

NOV - 7 2012

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## CHICAGO MOTOR CAR CORP.'S VERIFIED COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND REQUEST FOR JURY TRIAL

COME NOW Plaintiffs, Chicago Motor Car Corporation, Parin Shah, and Frank Sacco (collectively "Plaintiffs" or "CMC" unless otherwise stated herein), by and through their undersigned counsel, Gonzalez Saggio and Harlan L.L.C., and for their Complaint against Defendant David Bates ("Defendant"), respectfully allege as follows:

### Nature of the Action

1. This is an action for: (i) false advertising under the Lanham Act (15 U.S.C. § 1125 (a)(1)(B)); (ii) cybersquatting under the Anti-cybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)(1)(A)); (iii) false advertising/unfair competition under common law of Illinois and statutorily under the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510 et seq.; (iv) acts of defamation under common law of Illinois; (v) tortious interference with contractual relations and prospective business advantage claims under common law of Illinois; and (vi) false light.

1

2.       Plaintiffs seek to enjoin Defendant from continuing to disseminate false and misleading advertising and related defamatory communications about Plaintiffs and Plaintiffs' business, and from continuing to use and maintain possession of certain domain names and related websites incorporating Plaintiffs' business name and trademark.  Defendant's websites and related smear ad campaign have been adopted and designed to defame Plaintiffs' business, cybersquat on Plaintiffs' mark, and mislead the public about the nature, characteristic, and quality of Plaintiffs, Plaintiffs' business, Plaintiffs' reputation and Plaintiffs' trademark.

3.       Defendant's actions have been purposefully intended to injure Plaintiffs, Plaintiffs' business and Plaintiffs' reputation.

4.       Defendant's actions have caused harm to Plaintiffs' business and reputation, and the goodwill associated with Plaintiffs' mark, as Plaintiffs' have lost over twenty (20) customers.

5.       Plaintiffs seek compensatory damages against Defendant for having violated the laws as founded in more detail herein.

## Jurisdiction and Venue

6.       Jurisdiction over the parties and subject matter of this action is proper in this Court pursuant: (i) to 15 U.S.C. § 1121 (actions arising under the Lanham Act); (ii) 28 U.S.C. §§ 1331, 1338 (federal question arising under federal law);  and (iii) 28 U.S.C. § 1332(a) (diversity of citizenship between the parties and amount exceeding $75,000).  This Court has supplemental jurisdiction over the defamatory and false advertising claims in this Complaint that arise under Illinois statutory and common law pursuant to 28 U.S.C. § 1367(a) and Fed. R. Civ. P. 18(a).

7.       This Court has personal jurisdiction over Defendant based on Section 2-209 of the Illinois Code of Civil Procedure, applicable pursuant to Fed. R. Civ. P. 4(e)(1); 735 Ill. Comp. Stat § 5/2-209(a)(1,4,7), (b)(4), and (c). Defendant has engaged in defamatory publications and

2

libelous statements in cyberspace that are substantially connected with this state and should have alerted Defendant as to the possibility that he could be sued in this forum, particularly in light of an exchange of communications between the parties from two cease and desist letters sent to Defendant. *See* **Exhibit A** attached hereto (email communications between the parties).

8.      Defendant has sufficient minimum contacts and purposefully availed himself of the privilege of conducting activities and business in Illinois, in that Defendant has engaged in deliberate misconduct designed and intended to injure Plaintiffs, including an Illinois corporation-citizen, which employs and utilizes the services of Illinois citizens and otherwise conducts business in Illinois both physically as an automobile dealership and via the Internet in offering for sale automobiles. Defendant has intentionally disseminated false and misleading information about Plaintiffs and Plaintiffs' business to a targeted audience in the State of Illinois and throughout the United States.

9.      Subjecting Defendant to *in personam* jurisdiction in this Court, therefore, comports with traditional notions of fair play and substantial justice, and he should be held accountable where the injuries have occurred and continue to occur. Defendant's defamatory messages have been, and continue to be, transmitted on the Internet via registered domain names (which incorporate Plaintiffs' business name and trademark), as well as in social media outlets such as Facebook and YouTube, all of which are transmissions available to the public in and throughout the State of Illinois.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) (2,3) because a substantial portion of the events giving rise to the claims occurred in this District, as discussed herein, and Defendant has directed harm and mislead the public in connection with Plaintiffs' reputation and principal place of business, which is located in Chicago, in the Eastern Division

of the Northern District of Illinois, pursuant to 28 U.S.C. § 1391(b)(2).

## Parties

11.     Plaintiff, Chicago Motor Car Corporation, is a corporation duly organized and existing under the laws of the State of Illinois, with its corporate address at 30 W 429 Mulberry Drive, West Chicago, Illinois 60185, and two places of business at 27 W 110 North Avenue, West Chicago, Illinois 60185, and 27 W 333 North Avenue, West Chicago, Illinois 60185.

12.     Plaintiff, Parin Shah, the co-President of Chicago Motor Car Corporation, is an individual and  citizen of the United States, and resides at 446 Meadows Edge, Lisle, Illinois 60532.

13.     Plaintiff, Frank Sacco, the co-President of Chicago Motor Car Corporation, is an individual and citizen of the United States, and resides at 241 Red Oak Court, West Chicago, Illinois 60185.

14.     Upon information and belief, Defendant David Bates is an individual residing at 3700 East Elm Road, Oak Creek, Wisconsin 53154.

## Plaintiffs' Business

15.     Since at least as early as February 2004, Plaintiffs have operated as an automobile dealership in West Chicago, Illinois.  Plaintiffs' business is in good standing, and qualified and registered to do business in and throughout the State of Illinois.  *See* **Exhibit B** (corporate status report via Illinois Secretary of State) attached hereto.  Plaintiffs own and operate two physical offices with available automobile inventory for sale to the public in West Chicago, Illinois.

16.     For over a decade, Plaintiffs have been engaged in the marketing and offering for sale of high-end exotic automobiles and dealership services related thereto.  Plaintiffs offer for

4

sale to the public high-end exotic automobiles of varying makes and models, including sedans, coupes, SUVs, convertibles, trucks and motorcycles.

17.     For almost a decade, Plaintiffs have used the trademark CHICAGO MOTOR CARS ("the CMC Mark") in connection with their automobile dealership services and on the advertisement and sale of their automobiles, both in words and in the following design:



18.     In addition to offering automobile dealership services by operation in their two physical offices, Plaintiffs also offer for sale automobiles under the CMC Mark online via their company website at www.chicagomotorcars.com.  A true and correct print-out of the homepage for the www.chicagomotorcars.com website, prominently displaying the CMC Mark, is attached hereto as **Exhibit C** (representative sampling of company webpages).

19.     Plaintiffs' website includes links to the inventory of their automobiles that are available for purchase.  Plaintiffs' website also features a "live-chat" function, which provides the ability to exchange communications with one of Plaintiffs' representatives.  Plaintiffs' website includes additional information about their automobile dealership services, such as inventory, financing, warranties, detailing and scheduling of appointments for maintenance.

20.     In addition to advertising via their company website, Plaintiffs also advertise under the CMC Mark via social media outlets, such as Facebook, and online auction websites, such as eBay.  *See* **Exhibit D** (eBay and Facebook homepages) attached hereto.

21.     In addition to advertising on the Internet, Plaintiffs advertise their CMC Mark in connection with automobile dealership services in print publications (such as brochures, flyers, trade magazines and newspaper), and in radio advertisements and television commercials.

22. For almost a decade, Plaintiffs have built a reputation for providing high-end automobiles under their CMC Mark. Since 2004, Plaintiffs have sold automobile inventory online via their company website, totaling over $700 million. On average, twenty-five thousand (25,000) persons visit Plaintiffs' company website on a monthly basis. CMC sells approximately two hundred (200) automobiles annually through its web site. As a result of Plaintiffs' marketing efforts, Plaintiffs' website and business have become extremely successful with hundreds of potential buyers registered with it and millions of visitors to its website.

23. For almost a decade, Plaintiffs have expended substantial time, money, and other resources in developing, advertising, and otherwise promoting their CMC Mark and related business. As a result, Plaintiffs' automobile dealership services under their CMC Mark are recognized and exclusively associated by consumers, the public, and the trade as being high quality products sourced from Plaintiffs. Plaintiffs' targeted consumer base has come to expect their CMC Mark as used in connection with their services are associated or affiliated with, or authorized by, Plaintiffs.

24. Plaintiff, Chicago Motor Car Corporation, is the owner of U.S. Serial No. 85/716,898 for the application to register the CMC Mark in connection with "automobile dealership services; providing information about automobiles for sale by means of the Internet." Plaintiff, Chicago Motor Car Corporation, also filed recently a second application to register the CMC Mark in the aforementioned design (paragraph 17) in connection with the same description of services. *See* **Exhibit E** (true and correct copy of U.S. Trademark Office's electronic record of Plaintiffs' trademark applications) attached hereto.

25. Plaintiffs have used their CMC Mark in connection with their automobile dealership services continuously, consistently, substantially, and exclusively for almost a decade in commerce in and throughout the State of Illinois.

**Defendant's Acts of False Advertising, Cybersquatting And Defamation**

26. Defendant registered in bad-faith Plaintiffs' business name and CMC Mark via the following websites, namely:

- www.chicagomotorcars.us
- www.chicagomotorcarssuck.com
- www.dbec.us/chicago_motor_cars.htm

27. In or around April 2012, Defendant registered the domain name <chicagomotorcars.us>. *See* **Exhibit F** (domain name registry page) attached hereto. In or around August 2012, Defendants registered the domain name <chicagomotorcarssucks.com>. *See* **Exhibit G** (domain name registry page) attached hereto.

28. In addition to the aforementioned domain names in paragraph 27, Defendant's smear ad campaign has expanded via various social media platform websites, including Facebook and Yahoo, namely:

- http://www.youtube.com/user/davidbates65
- http://www.facebook.com/ChicagoMotorCarsBuyerBeware
- http://www.dbec.us/chicago_motor_cars
- http://www.audioforums.com
- http://www.complaintsboard.com
- http://www.6speedonline.com
- http://www.reviewstalk.com
- http://www.triblocal.com
- http://forums.motortrend.com
- http://www.ebay.com
- http://www.ripoffreport.com
- http:www.dealerrater.com
- http://www.cars.com

7

(aforementioned websites in paragraphs 26 and 28 collectively "Defendant's Websites").

Examples of the Defendant's smear ad campaign are attached hereto as **Exhibit H**.

29.     Long after Plaintiffs' CMC Mark had been used and known as a source identifier for Plaintiffs' automobile-related services, and after Plaintiffs had begun offering its services online in connection with the CMC Mark, Defendant registered Defendant's domain names in bad faith and for the purpose of initiating a false and defamatory advertising campaign.

30.     Defendant's smear ad campaign intentionally seeks to harm Plaintiffs' reputation, goodwill, and commercial magnetism associated with its business and CMC Mark.

31.     Defendant's websites, particularly <chicagomotorcars.us> and <chicagomotorcarssuck.com>, incorporate Plaintiffs' CMC Mark and are a blatant, bad-faith attempt to traffic off of Plaintiffs' CMC Mark and associated business therewith.

32.     Defendant is using photographs and images of Plaintiffs' CMC Mark and business without Plaintiffs' permission, authorization or consent.  A representative sampling of Defendant's websites are depicted below:

8





**Chicago Motor Cars commits fraud and falsely advertises cars.**

Chicago West Motors: Mercedes SL600

**Chicago Motor Cars of Illinois is nothing more than fraudulent scammers who falsely advertise their cars. Here is our story:**

What I was looking for: A 2004 or newer SL600 with AMG sport package, panoramic roof, heated and vented seat, low miles and in pristine condition.

Several weeks ago I had contacted your dealership because you had been advertising a Mercedes SL600 AMG Biturbo with low miles and in pristine condition. I spoke with Robby on the phone who confirmed he did still have
this car available, that the car was indeed in pristine, "showroom" condition and had only 20000+ miles. Robby and I had discussed what I had been shopping for in a car; A Mercedes SL600 2004 or newer with AMG sport
package, fully loaded w/keyless go, both heated and vented seats and panoramic roof. Robby assured me he had the car I was looking for minus the panoramic roof. I decided since the car had all the other features I was looking
for, I was indeed interested in purchasing the vehicle.

On Thursday, March 22nd, we drove to West Chicago to pay cash and pick up the car. Upon arrival the car was parked outside the garage ready for inspection. It was immediately recognized that the car had not been cleaned.
The inside appeared dirty and had several scuffmarks. This could be overlooked since it did not change the value of the car, but it was our first sign of poor customer service. Robby and Harry approached us shortly



*See* **Exhibit I** (representative sampling of Defendant's webpages).

33.     Defendant's websites are wrought with defamatory and falsely misleading communications about Plaintiffs and Plaintiffs' business reputation, including without limitation:

- "Chicago Motor Cars of Illinois is nothing more than fraudulent scammers who falsely advertise their cars."
- "I was personally ripped off and defrauded by this crooked dealership."
- "Like I tell everyone I believe 99% of the dealers out there are liars, cheaters, & scumbags."
- "Parin Shah is crooked, a liar and will false[l]y advertise[] cars just for a sale."
- "Buying a car from this location will be the worst mistake you will ever make in your car buying days. This company falsely advertises, lies, steals and play's games with wording and money."
- "Do not buy from this dealership! They falsely advertise features and services done to the car that are not there. Not to mention they didn't have the title or keys!! They are all about the almighty dollar and seeing who they can take advantage of."
- Calling Plaintiff Shah a "crook" and a "criminal."

Defendant's websites are wrought with additional false and defamatory statements about the Plaintiffs, including without limitation, assertions of false information about the pricing and chain of title of Plaintiffs' automobiles.

34.     As depicted in paragraph 32 above, Defendant's smear ad campaign includes purposefully creating a Facebook profile page with the name "Chicago Motor Cars Buyer Beware."

35.     Defendant's Facebook page was created on or about May 21, 2012. Defendant's Facebook page incorporates Plaintiffs' CMC Mark and a photograph of Plaintiffs' car lot. Defendant's Facebook profile has received over 678 "likes" in less than three months.

36.     Defendant's websites include a photograph of a young boy with his pants down urinating on Plaintiffs' CMC Mark and business name:

12



37.     Defendant's websites specifically to divert consumers away from Plaintiffs' business.

38.     Defendant's smear ad campaign is designed to embarrass, humiliate, defame, and otherwise interfere with Plaintiffs' business; and tarnishes the goodwill and value of Plaintiffs' CMC Mark and related business.

39.     In addition to trafficking in bad-faith websites devoted to disparaging and otherwise tarnishing Plaintiffs' CMC Mark and related business, Defendant is also posting various videos via YouTube, and incorporating them into Defendant's Facebook profile page.

40.     Defendant Bates is making libelous statements about Plaintiffs' business in OVER forty (40) video clips via YouTube, including without limitation:

- http://www.youtube.com/watch?v=bBaCKZM05c0&feature=plcp

*See* Exhibit J (see also additional YouTube video links in cd attached hereto).

41.     Related to http://www.youtube.com/watch?v=BPld6qWWRJM&feature=plcp, the specific statements that Defendant made that are false and misleading are:

   a.  That he was billed to pay $42,024.61 plus tax, title, and license for the car, rather than $37,500.00;

   b.  That CMC does not have two (2) keys for the car, which they do;

13

    c. That the car was not working while everything worked on the car. He was specifically turning the car on and off in the video showing that it worked. Any issues and or problems with the car were repaired before he received the car; and

    d. CMC does have the title for the car and always has had the title for the car. See **Exhibit K** attached hereto.

42. Related to http://www.youtube.com/watch?v=E1eiK4ncxQk&feature=plcp, the specific statement that Defendant Bates made that is false and misleading is:

    a. CMC purchased the car from Car Source USA and then sold it. It is not illegal for CMC to buy a car from another dealer and then retail it to a customer. CMC has the bill of sale from purchasing the car from Car Source USA and from selling it to a CMC customer.

43. Related to http://www.youtube.com/watch?v=Kd0RIIvRmo0&feature=plcp, the specific statements that Defendant Bates made that are false and misleading are:

    a. The VIN is listed on the CMC website;

    b. The price is listed on the CMC website;

    c. Chris is a CMC employee;

    d. CMC listed this car for $197,800.00 and then lowered it to $189,800.00. CMC never listed it for $201,000.00 and Defendant Bates has no proof of the same; and

    e. This car was taken by CMC on trade and not from Bentley Gold Coast. Dr. Patel traded it on Ferrari California and Bentley Gold Coast sold it to Dr. Patel; and

14

f. **Exhibit K**, attached hereto, demonstrate Defendant Bates' statements were false and misleading.

44. Related to http://www.youtube.com/watch?v=IoNlAFGrlso&feature=plcp, the specific statements that Defendant Bates made that are false and misleading are:

a. The GTR on Goldrush was sold to a Goldrush member;

b. The GTR that was on the CMC website wan an Alpha 9 and not the GTR that Defendant Bates posts in his videos;

c. CMC bought the GTRs from dealers and not individuals, proof of which is attached hereto as **Exhibit K**; and

d. **Exhibit K**, attached hereto, demonstrate Defendant Bates' statements were false and misleading.

### Injury to Plaintiffs

45. Defendant's conduct is causing irreparable harm to Plaintiffs' reputation and to the goodwill of CMC Mark. Plaintiffs have devoted considerable time and resources to building the reputation and goodwill surrounding its CMC Mark and related automobile dealership service. Defendant's trafficking of defamatory websites taint Plaintiffs' CMC Mark, their reputation, and business, and thereby, compromise Plaintiffs' ability effectively to advertise and offer for sale their automobile dealership services to the public.

46. The harm that Plaintiffs have suffered (and will continue to suffer) is particularly acute and imminent because Defendant's false advertising and defamatory campaign has already reached the potential customers and the public overall via the Internet. The enormous dissemination of Defendant's acts streaming so broadly to the consuming public via the Internet

15

are clearly intended to and undoubtedly has had and will continue to have a major impact on Plaintiffs' CMC Mark, their reputation, business, and Plaintiffs' ability to sale their automobiles.

47.     Plaintiffs have received numerous complaints from their consumer base already. Specifically, Plaintiffs' consumer base has complained about the inferences of Defendant's false advertising and defamatory campaign and their respective desire not to be involved or near Defendant's attacks. Plaintiffs have lost approximately twenty (20) customers in light of Defendant's smear ad campaign.

48.     Twenty (20) vehicles offered for sale by Plaintiffs amount to approximately $80,000 (see Sacco Declaration attached hereto) worth of lost revenue.

49.     Defendants have engaged in conduct intentionally, willfully, and maliciously with knowledge that the claims being made are false, misleading and deceiving to the public with the intention to harm Plaintiffs, their reputation and business.

## COUNT I
### (False Advertising in Violation of the Lanham Act)

50.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 35 above as if fully set forth herein.

51.     Defendant's websites and related social media ad campaign contain statements that are false, deceptive, and misleading in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

52.     Defendant's false, deceptive, and misleading websites and related social media ad campaign are likely to deceive customers and are likely to influence customers' purchasing decisions.

16

53.     Defendant's false, deceptive, and misleading websites and related social media ad campaign misrepresent the quality, character and nature of Plaintiffs' business and related commercial activities.

54.     Defendant's false, deceptive, and misleading websites and related social media ad campaign have caused and will continue to cause irreparable harm to Plaintiffs unless and until Defendant's conduct is enjoined by the Court, and Plaintiffs have no adequate remedy at law.

55.     As a direct and proximate result of Defendant's false, deceptive, and misleading websites and related social media ad campaign, Plaintiffs have suffered damages in an amount to be determined by the trier of fact.

**COUNT II**
**(Violation of Anti-Cybersquatting Consumer Protection Act)**

56.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 55 above as if fully set forth herein.

57.     Defendant registered his <chicagomotorcars.us> and <chicagomotorcarssuck.com> websites in bad-faith with an intent to profit.

58.     Defendant's websites are intended to drive away Plaintiffs' customers, and tarnish Plaintiffs' business name and CMC Mark and goodwill to the detriment of Plaintiffs.

59.     Defendant's websites are intended to embarrass, humiliate, defame, and otherwise interfere with Plaintiffs, Plaintiffs' goodwill and value associated with their CMC Mark, and their business in violation of the Lanham Act, 15 U.S.C. § 1125(d).

60.     Defendant registered two domain names identical to Plaintiffs' CMC Mark, www.chicagomotorcars.us and www.chicagomotorcarssuck.com.

61.     Defendant has no intellectual property rights or legitimate interest in seeking to

17

register and incorporate Plaintiffs' CMC Mark in their domain names.

62.     Defendant is not currently engaged in any legitimate, non-infringing business under the domain names.

63.     Defendant's registered domain names do not consist of any legal name of Bates.

64.     Defendant's false, misleading and defamatory content regarding Plaintiffs' business and CMC Mark on his websites under these domain names -- including incorporating pictures of Plaintiffs' CMC Mark in a degrading, disparaging and tarnishing manner – constitutes bad faith.

65.     Defendant's portrayal of the below image certainly supports a likelihood of disparagement and harm to Plaintiffs' CMC Mark, goodwill and reputation:



## COUNT III

**(Disparagement under the Illinois Uniform Deceptive
Trade Practices Act, 815 Ill. Comp. Stat. § 510/1 *et seq.*)**

66.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 55 above as if fully set forth herein.

67.     Defendant's websites and related smear ad campaign include published statements about Plaintiffs and Plaintiffs' business that are false or misleading for which disparage Plaintiffs' business in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat.

§ 510/1 *et seq.*

68.    As set forth in paragraphs 32 thru 46, Defendant's websites and related smear ad campaign include false and misleading representations of facts for which disparages Plaintiffs and Plaintiffs' automobile dealership services, in particular in a malicious and willful manner.

## COUNT IV

### (Defamation)

69.    Plaintiffs incorporate by reference the allegations in paragraph 1 through 55 as if fully set forth herein.

70.    Defendant falsely alleged that Plaintiffs committed acts as outlines in paragraphs 32 thru 46 of the Complaint.

71.    Defendant published and disseminated their defamatory statements to the public via a social media ad campaign, including on Defendant's own websites, Defendant's Facebook profile page and on YouTube. *See* **Exhibits I, J, and K.**

72.    Defendant knew his statements were false or made them with a reckless disregard of whether the statements were true or false. The actions of Defendant were therefore done with actual malice.

73.    Defendant's statements were unjustified, malicious and willful.

74.    As a proximate result and consequence of the wrongful acts of Defendant, Plaintiffs have been damaged, including but not limited to the loss of business. See **Exhibit L** attached hereto.

## COUNT V

### (Intentional Interference with Contractual Relations And Prospective Economic Advantage)

19

75.     Plaintiffs incorporate by reference the allegations in paragraph 1 through 55 as if fully set forth herein.

76.     Defendant can reasonably expect that Plaintiffs' business includes entering into valid business relationships and contracts with existing vendors and potential buyers of Plaintiffs' automobiles.

77.     Defendant has knowledge of Plaintiffs' business, and are intentionally and improperly interfering with Plaintiffs' business, including going so far as contacting Plaintiffs' existing vendors and customer base.

78.     Defendant's websites and related smear ad campaign are designed to prevent Plaintiffs from maintaining their existing vendors and securing potential buyers and otherwise tarnish Plaintiffs' business and good will.

79.     Defendant's actions have caused economic loss to Plaintiffs' business and are otherwise harming Plaintiffs' reputation and goodwill associated with their business.

80.     Defendant's actions have caused Plaintiffs to lose valid business relationships with existing vendors and potential buyers.

81.     Defendant's actions are unjustified, malicious and willful.

## COUNT V

### (False Light Under Illinois Common Law)

82.     Plaintiffs incorporate by reference the allegations in paragraph 1 through 51 as if fully set forth herein.

83.     Defendant's websites and related smear ad campaign include published false and

misleading statements about the Plaintiffs.

84. Defendant's websites and related smear ad campaign have placed Plaintiffs in a false light before the public, were done maliciously and would be highly offensive to a reasonable person.

**WHEREFORE,** Plaintiffs respectfully requests that this Court enter judgment against Defendant as follows:

(1) temporarily and permanently requiring that Defendant deactivate the websites with the domain names "chicagomotorcars.us", "chicagomotorcarssuck.com" and "dbec.us/chicago_motor_cars.htm" as permissible under 15 U.S.C. § 1125(d)(1)(C);

(2) temporarily and permanently requiring that Defendant transfer the domain name "chicagomotorcars.us" to the Plaintiffs as permissible under 15 U.S.C. § 1125(d)(1)(C);

(3) temporarily and permanently requiring that Defendant refrain from registering, operating, owning or otherwise maintaining any domain name incorporating or similar to Plaintiffs' business name and mark CHICAGO MOTOR CARS;

(4) temporarily and permanently requiring that Defendant deactivate their social media postings via Facebook and YouTube, which are publicly available at "www.youtube.com/user/davidbates65" and "www.facebook.com/ChicagoMotorCarsBuyerBeware" and refrain from registering, operating, owning or otherwise maintaining any social media account incorporating or similar to Plaintiffs' business name and mark CHICAGO MOTOR CARS;

(5) temporarily and permanently enjoining and restraining Defendant from utilizing, posting,

operating, or otherwise maintaining the domain names "chicagomotorcars.us",

"chicagomotorcarssuck.com" and "dbec.us/chicago_motor_cars.htm" or any variation

similar to Plaintiffs' business name and mark CHICAGO MOTOR CARS as permissible

under 15 U.S.C. § 1125(d)(1)(C);

(6) temporarily and permanently enjoining and restraining Defendant from utilizing, posting,

operating, or otherwise maintaining their social media postings via Facebook and

YouTube, which are publicly available at "www.youtube.com/user/davidbates65" and

"www.facebook.com/ChicagoMotorCarsBuyerBeware;

(7) ordering that any third-parties remove any of Defendant's defamatory and misleading

content currently available via their social media platforms such as Facebook and

YouTube should Defendant fail to deactivate, delete and otherwise remove such content;

(8) ordering any additional injunctive relief and any costs and attorneys' fees as the Court

deems appropriate under the Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat.

§ 510/3;

(9) awarding Plaintiffs compensatory damages for harm they have suffered as a result of

Defendant's actions in violation of all counts above, including without limitation, the cost

of payments Plaintiffs would have received from the loss of potential buyers as a result of

Defendant's smear ad campaign;

(10) awarding Plaintiffs statutory damages as available under the law, including without

limitation, up to $100,000 per domain name ("chicagomotorcars.us" and

"chicagomotorcarssuck.com") as permissible under 15 U.S.C. § 1117(d);

22

(11)  awarding Plaintiffs punitive damages as available under the law;

(12)  awarding Plaintiffs reasonable attorneys' fees as the Court deems appropriate; and

(13)  providing for other further relief as the Court deems just and proper.


Dated this ___7___ day of November, 2012.


                                    GONZALEZ SAGGIO & HARLAN LLC
                                    Attorneys for Plaintiffs, Chicago Motor Car
                                    Corporation, Parin Shah, and Frank Sacco,


                              By:_____
                                    Serena E. Pollack
                                    State Bar No.: 6274151


P.O. Address:
Gonzalez Saggio and Harlan L.L.C.
180 N. Stetson Avenue, Suite 4425
Chicago, IL 60601
(312) 236-0475
(312) 236-1750
serena_pollack@gshllp.com

Gonzalez Saggio & Harlan LLP
111 E. Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
(414) 277-8500
(414) 277-8521


23

## VERIFICATION

Plaintiffs Chicago Motor Car Corp., Parin Shaw, and Frank Sacco , by and through their undersigned agent being fully duly sworn on oath, state that he has knowledge of the facts contained in the foregoing Verified Complaint for Damages, Injunctive Relief and Request for Jury Trial ; that under penalties provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Chicago Motor Car Corp.

By: _____
Frank Sacco, Co-President

Subscribed and sworn to before me
this 7th day of November, 2012.

_____
Notary Public, State of Illinois
My Commission is/expires: 2/8/16

```
OFFICIAL SEAL
SINTHIA VON OHLEN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/08/16
```

24