**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHICAGO MOTOR CAR CORP., | ) | |
| PARIN SHAH, and FRANK SACCO, | ) | Civil Action No. 12-cv-8905 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID BATES, | ) | The Honorable John Z. Lee |
| Defendant. | ) | |

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS RULE 12(b)(6) MOTION TO DISMISS

Plaintiffs do not like the negative publicity they are receiving as a result of Defendant David Bates' negative statements about them. But can disgruntled customers criticize a business without subjecting themselves to liability for defamation, tortious interference, and violation of state and federal statutes aimed at deceptive business practices? If Plaintiffs' Complaint is to be believed, the answer is no. Plaintiffs invoke several legal theories in an attempt to silence Defendant's criticism. These legal theories, however, fail to state a claim for which relief can be granted and must be dismissed.

First, the various federal and state statutes that Plaintiffs rely upon have very specific pleading requirements to prevent their application to individuals, like David Bates, who engage in consumer criticism. Because Defendant's statements do not meet these very specific pleading requirements, Plaintiffs cannot state a claim under these statutes. Second, Plaintiffs' defamation claim is defective because Plaintiffs have not identified the allegedly defamatory statements with sufficient specificity to permit him to respond. Third, the few allegations Plaintiffs do identify are nonactionable statements of opinion and rhetorical hyperbole. Fourth, Plaintiffs do not state a

claim for defamation or false light because Plaintiffs do not sufficiently allege that Defendant acted with actual malice.

## FACTS[1]

Although this Court's decision on a 12(b)(6) motion is limited to the allegations of the Complaint, a little context goes a long way in this case. David Bates is a former customer of Chicago Motor Cars ("CMC"). His car-buying experience was a nightmare. The vehicle was not what it was advertised to be. Plaintiffs advertised the vehicle as a Mercedes SL600 with an AMG sports package and two master keys. In reality, the vehicle did not have the AMG sports package and Plaintiff did not give Defendant any master keys. Without a master key, Defendant was unable to use several of the vehicle's features (e.g. keyless start, keyless go (which allows the driver to operate the vehicle without placing a key in the ignition). The vehicle also had visible damage to the front bumper—damage that was not repaired despite Plaintiff Parin Shah's promises to repair the vehicle and have it thoroughly inspected and detailed before delivering it.

When Bates received the vehicle, the damage to the bumper was still evident. The vehicle was dirty inside and out and further inspection revealed that the vehicle had a cracked rim, a serious safety hazard. Bates also learned that the vehicle had been in a serious accident and had undergone bodywork and repainting. To top it all off, CMC did not provide Bates with the title to the vehicle when it delivered the vehicle, which was necessary so that the vehicle could be registered in the state of Wisconsin. Bates attempted to negotiate a lower price for the vehicle

---

[1] The facts recited herein come from the Exhibits to the Complaint and transcripts of the YouTube videos referenced in the Complaint and attached to Defendant's memorandum of law as **Exhibits A-D**. *See Venture Associates Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("A plaintiff is under no obligation to attach to her complaint documents upon which her action is based, but a defendant may introduce certain pertinent documents if the plaintiff failed to do so. Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.") (internal citations omitted).

given the defects he found. Eventually, CMC negotiated to sell the vehicle for $37,500. Bates agreed to this reduced price but then CMC suddenly reneged on the deal and refused to talk to Bates further.

Bates took to the internet to share his experience with CMC and warn other potential consumers about CMC's deceptive business practices. Bates registered two domain names www.chicagomotorcarssuck.com and www.chicagomotorcars.us and created websites for each of these domains where he shared his story. Bates also collected and reposted complaints others had left about Plaintiffs on various websites. In all, Bates posted his and others' experiences with CMC on the two websites he created, various other review and car enthusiast websites, his personal website, and a number of social media websites like Facebook and Youtube. In response to Bates' actions, Plaintiffs filed the instant suit.

## ARGUMENT

To state a claim, the allegations must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Factual allegations must give enough detail to give "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a 12(b)(6) motion, the Court must consider the entire complaint including the materials incorporated into the Complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Venture*, 987 F.2d at 431.

## I.    Anticybersquatting Consumer Protection Act ("ACPA") claim

Plaintiffs have failed to state a cause of action under the ACPA because Plaintiffs have not adequately alleged an essential element of an ACPA claim: that the defendant had a bad faith

intent to profit from that mark. A rote recitation of the elements of a cause of action are insufficient to survive a 12(b)(6) motion to dismiss. *Ashcroft*, 556 U.S. at 678. Plaintiffs only make the conclusory allegation that "Defendant registered his www.chicagomotorcars.us and www.chicagomotorcarssuck.com websites in bad faith with intent to profit." Dkt. 1, ¶57. This is nothing more than a "[t]hreadbare recital[] of the elements of a cause of action" which "do[es] not suffice" to state a claim. *Ashcroft*, 556 U.S. at 678. Without factual allegations to support a conclusory allegation of a bad faith intent to profit, Plaintiffs' ACPA claim must be dismissed. *Id*. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 198 (7th Cir. 1985) ("Even the liberal notice pleading allowed by the federal rules requires the complaint to include the operative facts upon which a plaintiff bases his claim."); *see,e.g., Mayfield v. NASCAR*, 674 F.3d 369, 377-78 (4th Cir. 2012) (finding boilerplate allegations to be "precisely the sort of allegations that *Twombly* and *Iqbal* rejected.").

Finally, Plaintiffs' ACPA claim must be dismissed because Defendant has a noncommercial purpose for his website, namely to inform other customers of his experiences with Plaintiffs. *See Lamparello v. Falwell*, 420 F.3d 309, 318-19 (4th Cir. 2005) ("The [ACPA] was not intended to prevent "noncommercial uses of a mark, such as for comment, criticism, parody, news reporting, etc., and thus they are beyond the scope of the ACPA." (internal quotations omitted)). Defendant lists the purpose of his website in bold, colorful font at the top of the front page: "One customer's testimony to fully inform any future customers." Dkt. 1, p. 9. The Complaint even admits that "Defendant is not currently engaged in any legitimate, non-infringing business under the domain names." Id. at ¶62. Numerous courts have held that use of another's mark in a domain name is nonactionable where the defendant has a noncommercial purpose such as criticism

or informing other consumers. *See, e.g., Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1057-59 (10th Cir. 2008) (finding website used for criticism does not violate ACPA even if it uses a trademark as the domain name); *TMI, Inc. v. Maxwell*, 368 F.3d 433, 436-40 (5th Cir. 2004) (finding no ACPA violation where disgruntled customer registered domain name incorporating plaintiff's mark for the purpose of informing other consumers); *Lucas Nursery & Landscaping, Inc. v. Grosse*, 359 F.3d 806, 811 (6th Cir. 2004) (same).

## II.     Lanham Act Claim

### A.  Plaintiffs lack standing to bring false advertising claim

Plaintiffs do not have standing to bring a false advertising claim under the Lanham Act claim because they have not alleged that they are commercial competitors of Defendant. Without standing, a claim must be dismissed. *Arizona Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1442 (2011). To establish standing to bring a false advertising claim under the Lanham Act, Plaintiffs must allege that they are Defendant's commercial competitors. *L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*(*Heath*), 9 F.3d 561, 575 (7th Cir. 1993).

Here, Plaintiffs do not allege that they are commercial competitors of the Defendant. Plaintiffs have not done this because they cannot do this. The Defendant is simply an individual expressing his opinions; he does not sell automobiles. Applying the *Heath* court's holding, Plaintiffs' Lanham Act claim must be dismissed because they have not alleged that they are commercial competitors of Defendant. 9 F.3d at 575. The courts of this Circuit have consistently arrived at a similar result. *See Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 438-39 (7th Cir. 1999) (finding that a creator and marketer of cartoon characters lacked standing to bring false advertising claim against NFL and a football team); *Marvellous Day Elec. (S.Z.) Co., Ltd. v. Ace Hardware Corp.*, 2012 WL 4579511, at *2 (N.D. Ill. Oct. 2, 2012) (dismissing false adver-

tising claim for lack of standing where parties were not competitors); *Medallion Products, Inc. v. McAlister*, 2008 WL 5046055, at *5 (N.D. Ill. Nov. 20, 2008) (same); *Gail Green Licensing & Design Ltd. v. Accord, Inc.*, 2006 WL 2873202, at *5 (N.D. Ill. Oct. 5, 2006) (same).

### B. Plaintiffs fail to state a claim for false advertising because they do not allege that Defendant's statements were "commercial advertising or promotion"

To state a claim for false advertising, Plaintiffs must allege that Defendant's statements are "commercial advertising or promotion." 15 U.S.C. §1125(a)(1)(B); *see Johnson Controls, Inc. v. Exide Corp.*(*Johnson Controls*), 152 F. Supp. 2d 1075, 1081 (N.D. Ill. 2001). Plaintiffs do not allege that Defendant's statements were "commercial advertising or promotion" and thus, their false advertising claim must be dismissed. *See Installation Services, Inc. v. Elec. Research, Inc.*, 2005 WL 645244, at *2 (N.D. Ill. Mar. 21, 2005).

Although the Lanham Act does not define the term "commercial advertising or promotion," multiple Circuits and numerous Districts, including several courts in the Northern District of Illinois, have adopted a four prong test for defining these terms. *See e.g. Podiatrist Ass'n, Inc. v. La Cruz Azul de Puerto Rico, Inc.,* 332 F.3d 6, 19 (1st Cir. 2003); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56–58 (2d Cir. 2002) (adopting the first, third, and fourth prongs, but not reaching whether the second prong applies); *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273–74 (10th Cir. 2000); *Seven–Up Co. v. Coca–Cola Co.*, 86 F.3d 1379, 1384 (5th Cir. 1996); *Installation Services, Inc.*, 2005 WL 645244, at *2 (applying the three prongs used in *Fendi USA, Inc.* and dismissing Lanham Act claim because allegedly false representations did not meet each prong of test); *Johnson Controls*, 152 F. Supp. 2d at 1081. Under the four-prong test, a statement is commercial advertising or promotion only if it is: (1) commercial speech; (2) made by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing con-

6

sumers to buy defendant's goods or services; and (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry. *Johnson Controls, Inc.*, 152 F.Supp.2d at 1081.

Here, Plaintiffs fail to allege any facts sufficient to establish prongs 1-3 of the test enumerated by the *Johnson Controls* court.

First, Plaintiffs do not allege that Defendant's statements are commercial speech. *See Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 684 (7th Cir. 1998) (defining commercial speech as "speech which does no more than propose a commercial transaction."). Plaintiffs do not allege that Defendant's statements proposed any type of commercial transaction. In fact, the Complaint belies any argument to that effect. The purpose of Defendant's statements are contained on page 9 of the Complaint: to share "One customer's testimony to fully inform any future customers." Dkt. 1, p. 9. Defendant's YouTube videos are just an extension of his mission to inform consumers of what he considers to be Plaintiffs' unsavory business practices. Id. at ¶40. This does nothing to propose a commercial transaction and thus is not commercial speech.

Next, Plaintiffs' Complaint does not satisfy the second prong because Plaintiffs do not allege that Defendant is a commercial competitor. Finally, Plaintiffs' Complaint does not satisfy the third prong of the test because they do not allege that Defendant made his statements "for the purpose of influencing consumers to buy *defendant's goods or services*." *Johnson Controls*, 152 F.Supp.2d at 1081 (emphasis added); *see EventMedia Int'l, Inc. v. Time Inc. Magazine Co.*, 1992 WL 321629, at *3 (S.D.N.Y. Oct. 26, 1992) (dismissing Lanham Act claim because the Act applies only to "commercial speech that a competitor employs for the express purpose of influencing consumers to buy the competitor's goods or services[.]"). In fact, Plaintiffs admit that "De-

7

fendant is not currently engaged in any legitimate, non-infringing business under the domain names [www.chicagomotorcars.us and www.chicagomotorcarssuck.com].” Dkt. 1, ¶62. Neither do Plaintiffs allege that Defendant is engaged in any non-legitimate, infringing business.

Plaintiffs are attempting to misuse the Lanham Act to stifle Defendant's criticism. Plaintiffs' entire Complaint is devoted to alleging that Defendant's criticisms are allegedly false or misleading and have injured their business. That is insufficient to state a claim for false advertising under the Lanham Act. *See Wojnarowicz v. Am. Family Ass'n*, 745 F.Supp. 130, 141-42 (S.D.N.Y. 1990). Because Plaintiffs have not alleged that Defendant's statements were commercial advertising or promotion, their Lanham Act claim must be dismissed. *See Johnson Controls, Inc.*, 152 F.Supp.2d at 1082.

### III.     Illinois Uniform Deceptive Trade Practices Act (“UDTPA”) Claim

Plaintiffs' UDTPA claim is defective for the same reasons that their Lanham Act claim is defective. *MJ & Partners Rest. Ltd. P'ship v. Zadikoff*, 10 F. Supp. 2d 922, 929 (N.D. Ill. 1998) (“[T]he legal inquiry is the same under the Lanham Act as under the Consumer Fraud Act and the Deceptive Trade Practices Act.”). A claim under “the Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.,* must rise or fall based on the Lanham Act claim.” *Id*.; *see, e.g., Marvellous Day*, 2012 WL 4579511, at *5. Like the Lanham Act, the UDTPA is only implicated when the allegedly deceptive conduct occurs “in the course of [defendant's] business, vocation, or occupation.” 815 ILCS 510/2 (West 2012).

Plaintiffs do not allege any facts to support that Defendant made his statements in the course of his business, vocation or occupation. Defendant's statements are opinions and criticisms. *See* Dkt. 1, p. 9. Alleging that Defendant was critical of Plaintiffs' business and made

harsh comments is insufficient to state a claim under the Lanham Act. Similarly, it is insufficient to state a claim under the UDTPA.

## IV.    Defamation Claim

### A.  Plaintiffs do not sufficiently identify allegedly defamatory statements

Plaintiffs' defamation claim is defective because it does not identify the defamatory statements with sufficient specificity to permit Defendant to respond to the allegations. While Plaintiffs are not required to reproduce each and every defamatory statement verbatim in the Complaint, they must at least give enough detail for Defendant to identify which statements are allegedly defamatory so he can respond appropriately. *Wilton Partners III, LLC v. Gallagher*, 2003 WL 22880834, at \*5 (N.D. Ill. Dec. 5, 2003).

Plaintiffs allege that Defendant made defamatory statements. Plaintiffs have identified some statements that they claim are defamatory. *See* Dkt. 1, ¶¶33, 41-44 and Exhibit I to Dkt. 1. However, Plaintiffs are quick to label these statements as "examples" or a "representative sampling" that are provided "without limitation[.]" *See* Dkt. 1, ¶¶28, 32-33, 40. These allegations imply that Plaintiffs believe there are additional unidentified allegedly defamatory statements. According to the Complaint, these other statements appear on no fewer than 16 different websites—10 of which Defendant does not own or control (e.g. audioforums.com, 6speedonline.com, ebay.com)—and in over 40 video clips on YouTube. *See id.* at ¶¶26, 28, 40. Plaintiffs do not definitely state that these are the only websites where Defendant allegedly made defamatory statements. Defendant cannot possibly respond to such broad and vague allegations.

This is not a case where allegedly defamatory statements were made in a book and thus every statement in that book can be attributed to the author. In such a case, it might be sufficient

to allege that "the author, in his book, defamed the plaintiff" without much more specificity. But the instant case is much different and requires a much greater level of specificity.

This case involves millions of comments posted by hundreds of thousands of individuals. And this includes only the websites identified by Plaintiffs. Plaintiffs, however, provide no specifics beyond the fact that they consider an unidentified number of comments made on these (and possibly other unidentified sites) to be defamatory.

A practical example acutely illustrates the defect in Plaintiffs' allegations. The forum at www.6speedonline.com alone has over 3,555,992 comments posted by its 81,902 members. See **Exhibit E**. Defendant is not the author of every statement on this site mentioning Plaintiffs.[2] Despite the sheer volume of posts on this website, Plaintiffs only allege generally that Defendant made defamatory statements on this website. Plaintiffs may be ascribing to Defendant authorship of statements he did not even make. Defendant cannot be expected to search through every comment left on a massive site such as www.6speedonline.com and respond to every statement mentioning Plaintiffs—both those he made and those he did not lest Plaintiffs attempt to hold him liable for the statements of others.

Plaintiffs can adequately identify allegedly defamatory statements short of reproducing them verbatim. They can identify (1) each url where each statement is contained, (2) the username of the author, and (3) the date and time the comment was posted. This would permit Defendant to (1) locate the website containing the allegedly defamatory statements, (2) determine the username of the author, and (3) determine the specific statement(s) that Plaintiffs allege is defamatory. Without even this basic level of specificity, Defendant is unable to truthfully and accurately respond to Plaintiffs' allegations. *See Gallagher*, 2003 WL 22880834, at *6. For this

---

[2]     A search of "Chicago Motor Cars" on www.6speedonline.com's forum produces 2,110 results dating as far back as 2008.

reason, Plaintiffs' defamation claim should be dismissed until Plaintiffs identify with some specificity the allegedly defamatory statements.

### B. Defendants' statements were opinion, rhetorical hyperbole, or cybergriping

Statements of opinion are not actionable. *Wilkow v. Forbes, Inc.*, 2000 WL 631344, at *12 (N.D. Ill. May 15, 2000) aff'd, 241 F.3d 552 (7th Cir. 2001). Whether a statement is one of opinion is a question of law which can be decided on a motion to dismiss. *Id.* To determine if a given statement is one of opinion and thus not actionable, the Court must consider: (1) does the language have a precise and readily understood meaning, or is the language at issue loose, figurative, rhetorical, or hyperbolic, thus negating the impression that it presents actual facts?; (2) does the general tenor of the context in which the statement appears negate the impression that the statement has factual content?; (3) is the statement objectively verifiable as true or false?; and (4) does the social context and setting in which the statement was published support a conclusion that readers would readily consider the statement to be opinion, not fact? *Id.*

The statements identified by Plaintiffs as allegedly defamatory are contained in paragraph 33 and 41-44. The context for Defendant's statements are found in the YouTube video incorporated into the Complaint in paragraph 40. *See* **Exhibit A**, the transcript of that video; *Tellabs, Inc*, 551 U.S. at 322. In that video, Defendant explains that he purchased a vehicle from Plaintiffs advertised as a Mercedes AMG with two master keys. Defendant asserts that the vehicle did not have the AMG sport package nor did Plaintiffs give him any master keys, which are needed to control various functions of the vehicle such as the automatic start, the automatic go (allowing the vehicle to start without placing the key in the ignition). *See* id.

Considering this context, Defendant's statements were opinions criticizing Plaintiffs based on his experiences with them. One needs to look no further than the Complaint to see this.

11

Page 9 of the Complaint contains a screenshot of Defendant's website where he explains to every visitor to his site in large, conspicuous, colorful font that his website is "One customer's testimony to fully inform any future customers" Dkt. 1, p. 9. In sharing his opinions of Plaintiffs and their business practices, he uses "loose, figurative, rhetorical, or hyperbolic" language. This is not actionable. *Wilkow*, 2000 WL 631344, at *12.

As the *Wilkow* court noted "[a] reader of criticism expects rhetorical hyperbole and vivid metaphor, so the use of lively language is understood as hyperbole and metaphor, not as fact." *Id*. at *13 (*quoting Saenz v. Playboy Enterprises, Inc.*, 653 F. Supp. 552, 567 (N.D. Ill. 1987) aff'd, 841 F.2d 1309 (7th Cir. 1988)). No visitor to Defendant's website would have any doubt that they were reading criticism. *See* Dkt. 1, p. 9 (screenshot of Defendant's website reads in large, bold font "Chicago Motor Cars Sucks!"); *see also Taubman Co. v. Webfeats*, 319 F.3d 770, 778 (6th Cir. 2003) (finding use of the word "sucks" to be an expression of opinion). Defendant's website is littered with expressions of opinion (e.g. "worst mistake you will ever make," "worst dealership," "arrogant attitude," "scumbags," "Parin Shah is crooked, a liar and will falsey [sic] advertise cars just for a sale[,]" etc., *see* Dkt. 9, p. 9) that clue a reader into the fact that what is being expressed is opinion. *See Wilkow*, 2000 WL 631344, at *13; *see, e.g., Art of Living Found. v. Does*, 2011 WL 2441898, at *7 (N.D. Cal. June 15, 2011) (dismissing defamation claim because words like "embezzle," "fraud," "deceitful," "launder your black money" to describe plaintiff were opinion given the context that statements were made on "obviously critical blogs"); *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093 (N.D. Cal. 1999) (dismissing defamation claim because statements made on personal website and in internet forums calling plaintiff "a killer, an embezzler, a criminal, a fraud, a perjurer, and a liar" were opinion and rhetorical hyperbole).

12

The use of loose and hyperbolic language ("worst," "scumbags," "crook," "scammers, "liar") and the tenor (harsh, critical), setting (on a personal website and various internet forums), and context (after a disappointing car-buying experience) of the statements all support a finding that Defendant's statements are nonactionable statements of opinion. *See Wilkow*, 2000 WL 631344, at \*13; *see, e.g., Greenbelt Co-op. Pub. Ass'n v. Bresler*, 398 U.S. 6, 14 (1970) (finding use of the term "blackmail" to describe plaintiff's conduct nonactionable hyperbole); *Dilworth v. Dudley*, 75 F.3d 307, 310 (7th Cir. 1996) (noting that use of words like "scab," "traitor," "amoral," "scam," "fake," "phony," "a snake-oil job," and "lazy, stupid, crap-shooting, chicken-stealing idiot" are expressions of opinion and thus nonactionable); *Brown v. GC Am., Inc.*, 2005 WL 3077608, at \*8 (N.D. Ill. Nov. 15, 2005) (dismissing defamation claim based on finding that statement that "the entire company was 'f-ed up' because [plaintiff] could not get professional articles published" was statement of opinion and clear hyperbole); *Kirk v. CBS, Inc.*, 1987 WL 11831 \*4–5 (N.D. Ill. Jun. 4, 1987) (finding statements that plaintiff was an "unscrupulous charletan," "cancer con artist," and "quack" were protected statement of opinion).

**C. The allegedly false or misleading statements identified in paragraphs 41-44 cannot support a defamation claim.**

In paragraph 41 of the Complaint, Plaintiffs take issue with certain statements Defendant made in a YouTube video. **Exhibit A**. Plaintiffs identify and respond to statements in this video that they deem to be false and misleading. It must be noted that even if a statement is proven to be false, it is not necessarily defamatory. See (cite) (stating that a statement is not defamatory unless it causes harm to one's reputation…). Plaintiffs have not been defamed because Defendant stated that he paid $37,500 for the vehicle even if that statement is false because they have not suffered harm to their reputation from the statement.

In paragraph 42, Plaintiffs take issue with statements Defendant made in a YouTube video about a BMW 750 being listed on both CMC and another car-dealer's websites. **Exhibit B** hereto is the transcript of that video. Plaintiffs allege they purchased the vehicle from the other car dealer and resold it and that there is nothing illegal about doing so. *See* Dkt. 1, ¶42. Defendant did not state in his video that Plaintiffs engaged in illegal conduct. *See* **Exhibit B**. And even if Defendant's statement is false, Plaintiffs' reputation has suffered no harm.

In paragraph 43, Plaintiffs take issue with allegedly false and misleading statements made in another of Defendant's YouTube videos. **Exhibit C** hereto is the transcript of that video. Plaintiffs allege that the VIN for the vehicle is located on CMC's website. Defendant never stated that it was not. **Exhibit C**. Plaintiffs claim the price of the vehicle is listed on CMC's website. Defendant never stated that it was not. Id. Plaintiffs allege that Moran is a CMC employee. Defendant never stated he was not. Id. Plaintiffs allege that CMC never listed the car for $201,000. Defendant never stated that they did, although he did state that they listed the vehicle for $201,300. Plaintiffs finally allege that Defendant falsely stated that the vehicle came from Bentley Gold Coast when it in fact came from an individual who traded the vehicle in on another vehicle. Even if that is true, Plaintiffs' reputation has suffered no discernible harm.

Plaintiffs incorrectly believe that simply alleging a statement is false is sufficient to state a claim for defamation. This is not an accurate understanding of the law. Because Plaintiffs have identified only statements that even if proven false will not support a defamation claim, their defamation claim should be dismissed.

Plaintiffs' defamation and false light claims must be dismissed because Plaintiffs fail to allege adequately that Defendant acted with actual malice. *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 155 (1967) (defamation claim brought by public figure requires proof of actual malice);

14

*Brennan v. Kadner*, 351 Ill. App. 3d 963, 971, 814 N.E.2d 951, 959 (2004) (false light claim requires proof of actual malice). Plaintiffs' only allegations regarding actual malice are boilerplate allegations that Defendant acted with actual malice. *See* Dkt. 1, ¶¶49, 72. This is insufficient to state a claim. *Mayfield*, 674 F.3d at 378 (finding that "[plaintiffs'] assertion that [defendants'] statements 'were known by [them] to be false at the time they were made, were malicious or were made with reckless disregard as to their veracity' is entirely insufficient."); *Besen v. Parents & Friends of Ex-Gays, Inc.*, 2012 WL 1440183, at *6 (E.D. Va. Apr. 25, 2012) (finding boilerplate allegations of actual malice "wholly insufficient."); *Hanks v. Wavy Broad., LLC*, 2012 WL 405065, at *13 (E.D. Va. Feb. 8, 2012) (same).

## CONCLUSION

For the reasons stated herein, Defendant respectfully requests that this Court dismiss Counts I-IV and VI of Plaintiffs' Complaint.

DAVID BATES

By:  /s/ Andrew C. Murphy
One of his attorneys

Peter S. Lubin
Vincent L. DiTommaso
Andrew C. Murphy
DITOMMASO ♦ LUBIN, P.C.
17W 220 22nd Street, Suite 410
Oakbrook Terrace, IL  60181
(630) 333-0000
amurphy@ditommasolaw.com

15